UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BEVERLEE STEFFY,

                          Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    04-CV-319S
FORD MOTOR CO., INC.,

                          Defendant.

## I.  INTRODUCTION

Plaintiff Beverlee Steffy commenced this employment discrimination action by filing

a Complaint in the United States District Court for the Western District of New York.

Therein, she alleges several discrimination causes of action related to disparate treatment,

unlawful retaliation, and hostile work environment based on her gender (female) and

national origin (Native American).  Plaintiff brings this action pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").  Presently before this Court is

Defendant's Motion for Summary Judgment.[1]  Plaintiff opposes the motion.[2]  For the

reasons stated below, Defendant's motion is granted in part and denied in part.

## II.  BACKGROUND

**A.    Facts**

Plaintiff is a female member of the Umatilla Native American tribe.  (Steffy Aff., ¶ 2.)

She is one-half Native American from her father's side.  (Steffy Aff., ¶ 2.)  Defendant hired

---

[1]In support of its Motion for Summary Judgment, Defendant filed the following documents: a memorandum of law; the Affidavit of Sarah Thompson, Esq., with attached exhibits; the Affidavit of Santos Garza, with attached exhibits; the Affidavit of Nicole Berri; the Affidavit of Mark Chase; the Affidavit of Christina Millender; the Affidavit of Christopher Basmadjian; a Rule 56 Statement of Undisputed Material Facts; the Reply Affidavit of M. Rogan Morton, Esq., with attached exhibits; the Reply Affidavit of Santos Garza; a reply memorandum of law; and a reply to Plaintiff's Rule 56 Statement of Disputed Facts.

[2]In opposition to Defendant's motion, Plaintiff filed a memorandum of law, a Rule 56 Statement of Disputed Facts, and the Affidavit of Beverlee Steffy, with attached exhibits.

Plaintiff to serve as the Salary Personnel Supervisor in its Human Resources Department at the Buffalo Stamping Plant on November 27, 2000.  (Defendant's Rule 56 Statement of Undisputed Facts ("Defendant's Statement"), ¶ 1; Steffy Aff., ¶ 8.)  In April of 2002, Plaintiff became the Labor Relations Supervisor.  (Defendant's Statement, ¶ 2.)  In both of these positions, Plaintiff reported to Mark Chase, the Plant Human Resources Manager. (Defendant's Statement, ¶ 3.)

## 1.    Work Environment

Plaintiff openly displayed Native American decorations in her office and Defendant and its employees were aware of her Native American heritage.  (Steffy Aff., ¶¶ 14, 15.) Chase was also aware of Plaintiff's Native American heritage.   Plaintiff contends that beginning in February or March of 2001, Chase subjected her to comments, name calling, slurs, ridicule, belittlement, embarrassment and harassment because of her Native American heritage.  (Steffy Aff., ¶ 16.)  Plaintiff chronicled this mistreatment on a daily or weekly basis in her day-planner.[3]  (Steffy Aff., ¶ 17.)  For example, Plaintiff alleges that Chase engaged in the following conduct:

- referred to Plaintiff as "squaw" or "squaw girl" on repeated occasions (Steffy Aff., ¶ 18.);

- would say "How" or chant "ayah ayah" in Plaintiff's presence on repeated occasions  (Steffy Aff., ¶ 19.);

- referred to Plaintiff's Native American beliefs, rituals and customs as "voodoo and pagan"  (Steffy Aff., ¶ 20.);

- asked Plaintiff if she knew "Tonto"  (Steffy Aff., ¶ 20.);

---

[3]Excerpts from Plaintiff's day-planner are included as Exhibit C to the Steffy Affidavit.

- repeatedly performed "whoop" or "war dances" in Plaintiff's presence (Steffy Aff. ¶ 20.);

- told Plaintiff "there will be too many Indians and not enough chiefs" when she asked if she could bring her daughter to work (Steffy Aff., ¶ 21.);

- told Plaintiff to "put a spell on him and make him better" when discussing an employee's need to improve himself (Steffy Aff., ¶ 21);

- told Plaintiff that he did not want her "to think all white men speak with forked tongues" (Steffy Aff., ¶ 21);

- told Plaintiff that her daughter should "send AAA a smoke signal" when she was involved in a car accident (Steffy Aff. ¶ 21);

- told Plaintiff that the only reason she was getting stock options was because she was a minority woman and that if it was up to him, she would not get the options (Steffy Aff. ¶ 21);

- asked Plaintiff "Didn't you get mice, rats, and snakes in your tepees?" when Plaintiff complained about a mouse in her office (Steffy Aff., ¶ 21);

- on at least two occasions other employees witnessed Chase dancing around in a circle making "whooping" noises while performing a "war dance" (Steffy Aff., ¶ 22).

Plaintiff maintains that Chase's comments and actions were unwelcome and she did not find them to be humorous. (Steffy Aff., ¶ 23.) She advised Chase on several occasions that his comments were inappropriate and she asked him to stop. (Steffy Aff., ¶ 25.) Chase categorically denies engaging in any of this conduct. (Chase Aff., ¶ 3.)

In addition to derogatory comments regarding her national origin, Chase allegedly made disparaging remarks to Plaintiff about being a woman. Again, Plaintiff recorded these comments in her day-planner. (Steffy Aff., ¶ 27.) For example, Chase allegedly engaged in the following conduct:

- called Plaintiff and other female employees "his girls" (Steffy Aff., ¶ 29);

- 

3

- characterized an investigation that Plaintiff conducted as "women's intuition" (Steffy Aff., ¶ 31);

- told Plaintiff that "a man would work better with the union" and that the union "was a bunch of good old boys, and that they're going to work better under a male" (Steffy Aff., ¶ 33).

Plaintiff maintains that Chase's comments regarding her gender were unwelcome and she did not find them to be humorous.  (Steffy Aff., ¶ 39.)  She advised Chase on several occasions that his comments were inappropriate and she asked him to stop. (Steffy Aff., ¶ 40.)  Chase flatly denies making these statements.  (Chase Aff., ¶ 3.)

## 2.    Disparate Treatment

In addition to the conduct described above, Plaintiff maintains that Chase also treated her differently than he did non-Native Americans and men.  (Steffy Aff., ¶ 42.)  For example, she contends that Chase requested that she make copies, type letters and order coffee and refreshments, but did not make these requests of male employees.  (Steffy Aff., ¶ 32.)  Plaintiff also maintains that Chase:

- excluded her from union meetings;

- provided her no guidance or support relative to her job duties, but did so for males;

- scrutinized her travel reports more so than he did those of the male employees.

(Steffy Aff., ¶ 43.)

## 3.    Retaliation

Plaintiff maintains that she reported Chase's conduct to Santos Garza, Defendant's Employee Relations Supervisor, on August 30, 2002.  (Steffy Aff., ¶ 44.)  In response, Garza allegedly told Plaintiff that he did not believe her and that she could be limiting her

career opportunities by making such allegations.  (Steffy Aff., ¶ 45.)  Moreover, he advised

her that if other people heard of her complaints, they would not want her to be a part of

their organization and she would be seen as a troublemaker.  (Steffy Aff., ¶ 45.)  Garza

allegedly told Plaintiff that her pursuit of a complaint against Chase could be a career-

ending decision.  (Steffy Aff., ¶ 45.)

Plaintiff reiterated her complaints about Chase to Jim Larese, Defendant's Human

Resource Senior Manager, later in September of 2002, and expressed her concern that

her complaints were not being addressed.  (Steffy Aff., ¶ 46; Steffy Dep., p. 119.)  From

that point forward, Chase's conduct stopped.  (Steffy Aff., ¶ 47.)  However, an investigation

of Plaintiff's work performance began.

**4.     Defendant's Investigation of Plaintiff**

In the Fall of 2002, Defendant allegedly discovered irregularities in Plaintiff's job

performance.  On October 29, 2002, Plaintiff instructed Nicole Berri (then Nicole Fisher),

a Human Resources Associate, to terminate two temporary part-time hourly employees.

(Berri Aff., ¶ 6.)   Berri reviewed the employees' evaluations to prepare for the union

termination hearing and determined that the evaluations did not support termination for one

of the employees.  (Berri Aff., ¶ 7.)  She advised Plaintiff of her opinion, but Plaintiff

directed her to proceed with the terminations and "hide" the positive evaluation for the one

employee and to disregard a telephone call from that employee's supervisor indicating that

the employee had demonstrated improvement and should not be terminated.  (Berri Aff.,

¶ 8.)   Berri made copies of the employees' evaluations and proceeded with the

terminations as directed.  (Berri Aff., ¶ 9.)  She later provided Chase her copies of the

evaluations on October 31, 2002, at his request. (Berri Aff., ¶ 10.)

The union challenged the termination of these two employees, which required Chase to review their evaluations. (Chase Aff., ¶ 5.) He therefore asked Plaintiff to provide him with copies. (Chase Aff., ¶ 5.) Upon examination of the evaluations, Chase noticed dark and inconsistent markings. (Chase Aff., ¶ 6.) He therefore compared his copies of the evaluations with the copies made earlier in the week by Berri. (Berri Aff., ¶ 10; Chase Aff., ¶ 7.) It then became apparent that the copies Plaintiff provided had been changed. (Chase Aff., ¶ 8.)

For example, several ratings were changed from "S" (satisfactory) to "S-" and in one instance the phrase "does not" was inserted before the comment "works hard to conform to Ford standards." (Chase Aff., ¶ 9.) The word "attitude" was also written in the "character" section of one employee's evaluation. (Chase Aff., ¶ 10.) Chase concluded that the evaluations had been materially altered. (Chase Aff., ¶¶ 5-10.) Suspecting Plaintiff, he allegedly requested that Defendant's Dearborn, Michigan, office conduct an investigation of Plaintiff. (Chase Aff., ¶ 11; Defendant's Statement, ¶ 17.)

According to Defendant, the investigation revealed that Plaintiff altered the performance reviews to provide support for her decision to terminate the two temporary employees. (Defendant's Statement, ¶ 18.) The investigation also uncovered other integrity and performance issues regarding Plaintiff that included:

- Plaintiff admitted signing another employee's name on a medical examination form.

- Plaintiff tried to conceal, but then admitted violating company policy by discussing the content of her confidential interview during an internal company investigation with a co-worker.

6

- Plaintiff improperly intervened on her husband's behalf to secure him a day off during his probationary period (Plaintiff's husband was also employed by Defendant).

- Plaintiff settled a grievance with the union in excess of $20,000 without approval and instructed Berri to pay the settlement in two separate installments to avoid detection by management.

- Plaintiff informed Chase that Christina Millender requested to leave the Plant by the end of 2002 and she posted Millender's job.  In fact, Millender never made any such request.

- Plaintiff told Berri that the Human Resources Associates made "too much money for their age."

- Plaintiff frequently bypassed Chase on important issues and instead went right to the Plant Manager or personnel relations staff in Dearborn.

(Defendant's Statement, ¶ 19.)

Plaintiff denies engaging in any of the conduct Defendant attributes to her and she sets forth a rebuttal to each of the conclusions stemming from the investigation.  (Steffy Aff., ¶¶ 51-59.)

### 5.    Plaintiff's Suspension and Termination

On November 12, 2002, Plaintiff met with Garza, who told her that her complaints against Chase had been investigated and found to be groundless.  (Steffy Aff., ¶ 48.)  He also told her about the ongoing investigation into her job performance and advised her that she was being suspended with pay pending the outcome.  (Steffy Aff., ¶ 48.)  Garza reviewed with Plaintiff a list of the alleged misconduct, which Plaintiff denied.  (Steffy Aff., ¶¶ 49-51.)  Plaintiff also attempted to rebut the allegations.  (Steffy Aff., ¶¶ 51-52.)

Defendant apparently did not find Plaintiff's rebuttal persuasive.[4]   Based on the

---

[4]Plaintiff contends that she was not advised of seven of the eleven infractions that formed the basis of her termination, nor was she permitted an opportunity to respond.  (Steffy Aff., ¶ 54.)

conclusions of the investigation, Plaintiff's misconduct and her short service of less than two years, Defendant terminated Plaintiff's employment on January 24, 2003. (Defendant's Statement, ¶ 22.)  This decision was made by four management level employees in Dearborn, one of which was Garza.  (Defendant's Statement, ¶ 23.) Chase did not participate in the decision. (Chase Aff., ¶ 13.)

Plaintiff maintains that she was unlawfully terminated in retaliation for complaining about Chase's conduct.  Defendant maintains that Plaintiff was terminated because of her poor work performance.

## B.   Procedural History

Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on March 3, 2003.  (Defendant's Statement, ¶ 51.)  The EEOC conducted an investigation of Plaintiff's Charge but was unable to conclude that any statutory violation occurred.  (Complaint, Exhibit A.)  It therefore sent Plaintiff a Notice of Right to Sue Letter on March 30, 2004.  (Complaint, Exhibit A.)

Plaintiff timely commenced this federal action on April 26, 2004, by filing her Complaint with the Clerk of the Court.  Defendant filed an Answer thereto on May 17, 2004. The parties completed discovery, and on June 2, 2006, Defendant filed the instant Motion for Summary Judgment.  The parties completed briefing and then appeared for oral argument on August 24, 2006, after which this Court reserved decision.

## III.  DISCUSSION AND ANALYSIS

### A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary

9

adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). Nonetheless, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Id.

## B.   Plaintiff's Discrimination Claims

### 1.   Title VII Framework

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1); Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84 (2003). It is now well settled that discrimination claims brought under Title VII are analyzed under the burden-shifting analysis first set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973). See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).

The burden-shifting test first requires that the plaintiff establish a *prima facie* case of discrimination. If the plaintiff meets this initial burden and establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden then shifts to the

defendant to articulate a legitimate, non-discriminatory reason for the employment action. Texas Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed.2d 207 (1981)).  If the defendant succeeds in making this showing, "the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture."  Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993)).

Assuming that the defendant meets its burden at the second stage, the burden returns to the plaintiff to prove that the defendant's discrimination was intentional.  In this regard, the plaintiff must produce "evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock, 224 F.3d at 42.  "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."  Id.  However, "[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." Id. (quoting St. Mary's, 509 U.S. at 519).

### 2.    Plaintiff's Disparate Treatment Claims

A disparate treatment claim arises when a member of a protected class is treated less favorably than others under circumstances from which an unlawful motive could be inferred.  See Schwabenbauer v. Bd. of Ed. of City Sch. Dist. of City of Olean, 667 F.2d 305, 309 (2d Cir. 1981); see also Ott v. Perk Dev. Corp., 846 F.Supp. 266, 275 (W.D.N.Y. 1994).  Plaintiff's disparate treatment claims based on gender and national origin are subject to the Title VII burden-shifting analysis described above.

a.    Plaintiff's *Prima Facie* Case

"The burden of establishing a *prima facie* case of disparate treatment is not onerous." Burdine, 450 U.S. at 253; see also Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000) (characterizing burden as "minimal").  To state a *prima facie* case, a plaintiff must show that (1) she is a member of a protected class, (2) she is qualified for his position, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination.  Weinstock, 224 F.3d at 42 (citing McDonnell Douglas, 411 U.S. at 802).

Defendant argues that Plaintiff cannot make out a *prima facie* case of disparate treatment discrimination because she did not suffer an adverse employment action. However, it is undisputed that Defendant suspended Plaintiff with pay and then terminated her employment.  These are undoubtedly adverse actions for purposes of establishing a *prima facie* case.  Moreover, given the minimal burden at this stage and Defendant's proffer of a legitimate, non-discriminatory reason for terminating Plaintiff's employment, this Court finds it most expeditious in any event to assume the existence of a *prima facie* case and move to the next stage of the analysis.  See Besht v. Gen. Motors, 327 F.Supp.2d 208, 212-13 (W.D.N.Y. 2004) (citing United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.")); Wado v. Xerox Corp., 991 F.Supp. 174, 187 (W.D.N.Y. 1998).

### b.    Defendant's Legitimate, Non-Discriminatory Reason

The burden is now on Defendant to produce a legitimate, non-discriminatory reason for terminating Plaintiff's employment.  See Reeves, 530 U.S. at 142 (noting that the defendant's burden at the second stage is not one of proof or persuasion, but is more appropriately considered a burden of production.)  "This explanation must be 'clear and specific.'"  Gallo, 22 F.3d at 1226 (quoting Meiri, 759 F.2d at 997).

Defendant maintains that a panel of four management-level employees in Dearborn terminated Plaintiff's employment after receiving the results of the internal investigation. (Defendant's Statement, ¶ 23.) Defendant found that Plaintiff demonstrated poor judgment and repeatedly disregarded company policies.  (Garza Aff., ¶ 20.)  Based upon her service of less than two years, the results of the investigation and Plaintiff's misconduct, Defendant terminated Plaintiff's employment.   (Garza Aff., ¶¶ 20, 21 and Exhibit A.)  The record contains ample evidence of Plaintiff's alleged poor work performance, most notably the Disciplinary Action Proforma, which details the investigation and disciplinary complaints compiled against Plaintiff.  (Garza Aff., Exhibit A.)

Based on the above, this Court finds that Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination.[5]  Consequently, the presumption of discrimination created by Plaintiff's demonstration of a *prima facie* case "drops out of the picture."  Hicks, 509 U.S. at 511.

---

[5]Moreover, Plaintiff's counsel conceded at oral argument that Defendant has sufficiently asserted a legitimate, non-discriminatory reason for Plaintiff's termination.

### c.    Pretext for Intentional Discrimination

The burden now returns to Plaintiff to demonstrate that Defendant's non-discriminatory reason is mere pretext for actual unlawful discrimination. "Where a plaintiff has alleged that an employer's reasons for an adverse employment action are pretextural, all reasonable inferences must be drawn in favor of the plaintiff's showing of pretext." Joseph v. Manhattan & Bronx Surface Transit Operating Auth., No. 96 Civ. 9015, 2004 WL 1907750, at *14 (S.D.N.Y. Aug. 25, 2004).   At this stage, the court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (quoting Reeves, 530 U.S. at 143.)  This requires the court to determine whether "there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 443 (2d Cir. 1999).

A defendant's proffered non-discriminatory reason, however, "cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Olle v. Columbia Univ., 332 F.Supp.2d 599, 617 (S.D.N.Y. 2004) (quoting St Mary's, 509 U.S. at 502); see also AB v. Rhinebeck Cent. Sch. Dist., 224 F.R.D. 144, 153 n.9 (S.D.N.Y. 2004).  Therefore, to avoid summary judgment, Plaintiff must establish the existence of a genuine issue of fact as to whether Defendant's proffered explanations are false and a mere pretext for unlawful discrimination. Weinstock, 224 F.3d at 42.  Unless Plaintiff can point to evidence that reasonably supports a finding

14

of prohibited discrimination based on her gender or national origin, Defendant is entitled to summary judgment on her disparate treatment claim.  See James, 233 F.3d at 154.

In this Court's view, Plaintiff has failed to identify any evidence from which a jury could find that Defendant's legitimate, non-discriminatory reason is false, and that Defendant instead fired Plaintiff because she is a female or Native American.   First, Plaintiff has set forth no evidence from which it could be concluded that Defendant's investigation and the conclusions drawn therefrom are false or were motivated by her gender or national origin.  It is undisputed that Defendant conducted an investigation into Plaintiff's job performance and it is further undisputed that Defendant concluded that Plaintiff's job performance and ability to follow company policy was deficient.   While Plaintiff does not agree with Defendant's conclusion and offers a rebuttal to the charges against her, the fact remains that Defendant viewed Plaintiff's job performance as deficient for a variety of reasons and fired her for it.

Plaintiff argues that Defendant is advancing a "business judgment" reason for her termination, which itself may be viewed as pretext under the Second Circuit's decision in Montana v. First Fed. Sav. & Loan Assoc., 869 F.2d 100 (2d Cir. 1989).  In Montana,[6] the Second Circuit noted that in reduction-in-force or business reorganization cases, the district

---

[6]The relevant portion of Montana  involved an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.  After the merger of four savings and loan institutions, the newly formed defendant instituted a reduction-in-force for one of its four regions, reducing the number of employees from 600 to 480.  Montana, 869 F.2d at 102.  A short time later, the personnel department where Montana worked was consolidated and Montana, who was the oldest (56 years old), highest paid, and most senior (32 years) non-clerical employee, was terminated.  Id.  After Montana's termination, Defendant assigned the bulk of her duties to a 26-year-old woman who earned less money and had far less experience than Montana.  Id.  For a number of reasons, the Second Circuit concluded that Montana had demonstrated a prima facie case of age discrimination and had presented sufficient evidence (of which reliance on business judgment was just one part) to create a triable issue over pretext.  Id. at 103-106.

court should not place "undue significance" on a defendant's claim that it merely exercised a good faith business judgment in terminating the plaintiff's employment. 869 F.2d at 106. It further stated that when reduction-in-force or structural reorganization is proffered as a legitimate, non-discriminatory reason, the district court is permitted to "look behind the employer's claim that it merely exercised a business decision in good faith" to ensure that the business decision was not discriminatory. Id.

This case, however, involves neither a reduction-in-force, nor a structural reorganization. Defendant maintains that it terminated Plaintiff based on its internal investigation of her job performance and its conclusion that she repeatedly violated company policy. This is not a case where the defendant maintains that it selected the plaintiff for termination because of a need to reduce its workforce or for some other non-performance-based business reason. The asserted grounds for termination in this case are directly tied to Plaintiff's job performance and are thus individual to Plaintiff. Montana is therefore distinguishable and not instructive here.

There is no evidence in the record from which a reasonable jury could find that instead of being terminated because of her deficient work performance, Plaintiff was instead fired because she is a woman or is Native American. To the extent Plaintiff relies on the fact that Chase made disparaging remarks about her gender and national origin, it is noted that he did not participate in the decision to fire her. (Chase Aff., ¶ 13.) This Court recognizes that Plaintiff denies that her work performance was poor and that she offers numerous explanations for her conduct, but she offers no evidence to rebut the numerous disciplinary memos contained in the record that identify and chronicle her poor job

16

performance and inability to follow company policy and procedure.  (Garza Aff., Exhibit A.)

Clearly, Plaintiff and Defendant disagree about whether Plaintiff's job performance was

deficient.  However, this does not raise a material question of fact precluding summary

judgment on Plaintiff's disparate treatment claims.  Even if a jury disagreed with Defendant

that Plaintiff's job performance was deficient, there is still no evidence in the record from

which it could reasonably be concluded that Defendant actually fired Plaintiff because she

is a woman or Native American.

Simply being treated differently than one's co-workers is not actionable under Title

VII.  To be actionable, the motivation for the disparate treatment must be based on one of

the prohibited factors in Title VII.  Here, there is no disputed issue of material fact or any

evidence from which a reasonable factfinder could conclude that Defendant terminated

Plaintiff's employment because she is a woman or because she is Native American.

Plaintiff has thus failed to carry her burden of putting forth evidence from which a

reasonable trier of fact could conclude that Defendant's legitimate, non-discriminatory

reason for terminating her employment is false, and that Defendant actually discriminated

against her based on her gender or national origin.  Defendant is therefore entitled to

summary judgment on these claims.  See James, 233 F.3d at 154; see Lizardo v. Denny's,

Inc., 270 F.3d 94, 104 (2d Cir. 2001) (per curiam) (affirming district court's granting of

summary judgment where the plaintiffs did "little more than cite to their mistreatment and

ask the court to conclude that it must have been related to their race . . . This is not

sufficient.") Its motion seeking such relief will therefore be granted.

17

3.      **Plaintiff's Retaliation Claim**

Title VII makes it unlawful for employers to retaliate against employees who participate in protected activities, such as challenging discriminatory practices or actions. 42 U.S.C. § 2000e-3(a); Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004). When evaluating a Title VII retaliation claim, courts employ the McDonnell-Douglas burden-shifting analysis.

Under that framework, the plaintiff must first establish a *prima facie* case of retaliation. If the plaintiff makes such a showing, the burden shifts to the defendant, who must point to evidence that there was a legitimate, non-retaliatory reason for the employment decision at issue. If the defendant meets that burden, the plaintiff must demonstrate that "there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." Richardson, 180 F.3d at 443.

a.      **Plaintiff's *Prima Facie* Case**

To establish a *prima facie* case of retaliation, Plaintiff must show that (1) she participated in a protected activity, (2) her participation was known to the defendant, (3) she suffered an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse employment action. Richardson, 180 F.3d at 443; Jones v. Smithkline Beecham Corp., 309 F.Supp.2d 33, 356 (N.D.N.Y. 2004).

It appears that Defendant concedes that Plaintiff meets the first three requirements of a *prima facie* case. Plaintiff participated in protected activity when she reported and complained about Chase's conduct to Garza on August 30, 2002, and shortly thereafter

18

to Larese.[7]    (Steffy Aff., ¶¶ 44, 46.)    Defendant was therefore aware of Plaintiff's participation in protected activity.  Further, Garza suspended Plaintiff on November 12, 2002, and then Defendant fired Plaintiff on January 24, 2003.    (Steffy Aff., ¶ 48; Defendant's Statement, ¶ 22.)  Both the suspension and termination constitute adverse employment actions.[8]

Defendant argues that Plaintiff's *prima facie* case fails on the fourth prong because she cannot show a causal connection between her protected activity and the adverse employment actions, particularly because she was not terminated until approximately five months after she complained to Garza.   In response, Plaintiff argues that she has sufficiently demonstrated a causal connection because she was suspended just two and one-half months after voicing her complaints.  For purposes of establishing a *prima facie* case, where the burden is minimal, this Court finds that Plaintiff's contention that she was suspended two and one-half months after engaging in protected activity is sufficient to satisfy the fourth prong.

---

[7]It is not required that the conduct opposed actually constitute a violation of Title VII.  See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999) ("[A] plaintiff need not establish that the conduct [he] opposed was actually a violation of the statute so long as [he] can establish that [he] possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated that law." (internal quotation and alteration omitted)); see also Bush, 2006 WL 2720616, at *14.

[8]Last term, the United States Supreme Court clarified the necessary showing a plaintiff must make to demonstrate an adverse employment action in the retaliation context.  A plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, __ U.S. __, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (finding a reassignment of duties to be actionable retaliation, even though both former and present duties fell within the same job description).  In this regard, whether the employment action at issue is materially adverse "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."  Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 209 (2d Cir. 2006) (citing White, 126 S.Ct. at 2417.)  Under White, this Court easily finds that Plaintiff's suspension and termination constitute adverse actions. See 126 S.Ct. at 2415.

### b.   Defendant's Legitimate, Non-Discriminatory Reason

As discussed in the context of Plaintiff's disparate treatment claims, this Court finds that Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's suspension and termination, that being the investigation and resulting findings that Plaintiff demonstrated poor judgment and repeatedly disregarded company policies.  (Garza Aff., ¶ 20.)

### c.   Pretext for Retaliation

To defeat Defendant's motion, Plaintiff must now produce "sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation] was the real reason for the discharge."  Stephens v. SUNY at Buffalo, 11 F.Supp.2d 242, 250 (W.D.N.Y. 1998) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)).

Defendant argues that it is entitled to summary judgment because Plaintiff cannot demonstrate a causal or temporal connection between her involvement in protected activity and the adverse employment actions.  To establish a causal connection, a plaintiff must demonstrate that the adverse employment action "occurred in circumstances from which a reasonable jury could infer retaliatory intent."  Parrish v. Sollecito, 258 F. Supp.2d 264, 268 (S.D.N.Y. 2003).  This may be proven "indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . ." Gordon v. NY City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000); Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (the causal connection requirement "can be established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed

by discriminatory treatment").  "A close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse action is alone sufficient to establish causation . . . ." Parrish, 258 F. Supp.2d at 268 (citing Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001)).  However, "if the temporal proximity alone is the basis for determining a casual connection, it must be very close." Parrish, 258 F. Supp.2d at 268 (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed.2d 509 (2001)).

Having thoroughly examined the record evidence, and drawing all reasonable inferences in Plaintiff's favor, this Court finds that a rational trier of fact could in fact conclude that Defendant's proffered reason for taking adverse employment actions against Plaintiff is false, and that unlawful retaliation was the real reason for its conduct. Specifically, a reasonable jury could find that Defendant's investigation into Plaintiff's work performance and subsequent suspension and termination of her employment based on that investigation were motivated by its desire to retaliate against her for complaining about Chase's conduct.

Plaintiff first engaged in protected activity on August 30, 2002, when she complained to Garza about Chase.  (Steffy Aff., ¶ 44.)  She then reiterated her complaints to Larese. (Steffy Aff., ¶ 46.)  While Plaintiff concedes that Chase ceased his offending conduct immediately,[9] there is a colorable claim that Garza unlawfully retaliated against Plaintiff for making a complaint.  (Steffy Aff., ¶ 47)

---

[9]Plaintiff testified that her relationship with Chase became "very, very formal" after her complaints to Garza and Larese.  (Steffy Dep., p. 76.)  From that point forward, Chase invited others into meetings he had with Plaintiff so that they were not alone.  (Steffy Dep., pp. 76-77.)

Plaintiff testified during her deposition that when she expressed her complaints about Chase to Garza, he stated in response that

> number one, he'd known Mark for a long time, and number two, he didn't believe it, and then he went into a very long litany on how if you're in HR you shouldn't be making these kinds of comments, that you could be doing something that's going to be very limiting to your career, that if other people hear about them they're not going to want you to be part of their organization and that the HR organization is very small and everyone knows everybody else and you don't want to be perceived as a trouble maker.

(Steffy Dep., p. 74.)

Moreover, Plaintiff's day-planner, which this Court understands contains Plaintiff's contemporaneous notes, has this entry for August 30, 2002, the date Plaintiff spoke to Garza:

> Santos called.  I told him [about] Mark's threat [and] the things Mark has said to me.  He called me a liar [and] said Mark would never say those things – Mark's to [sic] "professional." He said I had made a fatal "mistake," that no one in the HR community would ever want to work w/me – I will be perceived as a troublemaker who goes over her Boss's head – He really reamed me over this!  Some support –

(Steffy Aff., Exhibit A.)

Garza admits that he spoke with Plaintiff, but characterizes their conversation quite differently.  He contends that Plaintiff called and complained about (1) not being invited to union/management meetings, (2) losing authority because her position was changing to a "generalist," and (3) Chase retaliating against her because she had "gone over his head" to the Plant manager.  (Garza Aff., ¶ 26.)  He contends that Plaintiff did not complain about Chase making comments about her national origin.  (Garza Aff., ¶ 25.)  Garza further

22

contends that he responded to Plaintiff's concerns, but not in the way that she alleges. (Garza Aff., ¶ 27.)

Approximately two and one-half months later, Garza met with Plaintiff and advised her that his investigation into her complaints against Chase revealed that they were groundless. (Steffy Aff., ¶ 48.) Moreover, he advised Plaintiff that her job performance was under investigation due to a number of complaints, some of which he explained to her. (Steffy Aff., ¶¶ 48, 49.) Garza further advised Plaintiff that she was suspended with pay. (Steffy Aff., ¶ 48.) Later, on January 24, 2003, Defendant terminated Plaintiff's employment without providing her notice of all of the charges against her and without affording her an opportunity to respond to or rebut the allegations. (Steffy Aff., ¶¶ 53-54.) Garza was one of the four management-level employees who made the decision to terminate Plaintiff's employment.

Plaintiff's and Garza's version of events are obviously in conflict. It must be left to the jury to determine whom to credit. In this Court's view, a reasonable trier of fact considering the evidence of record could reasonably resolve the factual disputes in Plaintiff's favor and conclude that Garza retaliated against Plaintiff for complaining about Chase by instituting or inviting the investigation, not providing Plaintiff full notice or a reasonable opportunity to respond to the allegations against her, and then participating in the decision to fire her. The jury could view this evidence and ultimately conclude that Defendant's proffered reason for suspending and terminating Plaintiff is false, and that unlawful retaliation is the actual reason. Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim will therefore be denied.

4.      Plaintiff's Hostile Work Environment Claims

The Supreme Court has held that Title VII's protection extends beyond "economic" or "tangible" discrimination.  Harris v. Forklift Sys., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L. Ed. 2d 295 (1993) (citing Meritor Savings Bank, FSV v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed. 2d 49 (1986)).  Rather, Congress enacted Title VII to "strike at the entire spectrum of disparate treatment of men and women in employment," including the requirement that employees work in a hostile or abusive environment.  Harris, 510 U.S. at 21.

To survive a motion for summary judgment, a plaintiff claiming that she was the victim of a hostile work environment must produce evidence from which a reasonable trier of fact could conclude "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (quoting Richardson, 180 F.3d at 436).  "The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility."  Leibovitz v. New York City Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001).

Defendants argue that they are entitled to summary judgment because (1) Plaintiff's claim is untimely, (2) the evidence in the record cannot support a finding on either of the two prongs cited above, and (3) Plaintiff failed to provide Defendant notice of the allegedly

24

hostile work environment.

      a.     **Timeliness**

In order to maintain an action under 42 U.S.C. §2000e-5, a plaintiff must ordinarily file a timely charge with the EEOC, receive from that agency a right to sue letter, and file an action within 90 days of receipt of that letter. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996); Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994). Because New York is a state with a fair employment agency, a charge of discrimination must be filed with the EEOC or the New York State Department of Human Rights within 300 days of the alleged discrimination. 42 U.S.C. §2000e-5(e); Harris v. City of New York, 186 F.3d 243, 247 n. 2 (2d Cir. 1999).

"The timeliness of a discrimination claim is to be measured from the date the claimant had notice of the allegedly discriminatory action." Van Zant, 80 F.3d at 713 (citing Morse v. Univ. of Vermont, 973 F.2d 122, 125 (2d Cir. 1992)). The 300 day filing requirement "functions as a statute of limitations." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998). The 300-day statute of limitations is strictly construed in this circuit. See, e.g., Trenchfield v. DuPont Photomasks, Inc., No. 96 CIV. 1135 (AGS), 1997 WL 53238, at *5-*6 (S.D.N.Y. 1997) (Title VII claims filed with the EEOC 338 days after alleged discriminatory employment practice dismissed as untimely); Van Zant v. KLM Royal Dutch Airlines, 870 F.Supp. 572, 575 (S.D.N.Y. 1994) (sexual harassment and retaliation claims dismissed as time-barred where last alleged discriminatory act was 315 days before EEOC filing). Moreover, the Supreme Court has noted that "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded

25

administration of the law.'" <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 108, 122, S.Ct.2061, 2070, 153 L.Ed.2d 106 (2002) (quoting <u>Mohasco Corp. v. Silver</u>, 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)).

Here, Plaintiff filed her charge with the EEOC on March 3, 2003.  (Defendant's Statement, ¶ 51.)  Accordingly, Plaintiff must allege at least one incident of sufficiently hostile treatment occurring on or after May 7, 2002[10] (300 days prior to March 3, 2003). <u>See</u> <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 220 (2d Cir. 2004) (at least one of the events comprising the alleged hostile work environment must fall within the statute of limitations).

Drawing all inferences in Plaintiff's favor, this Court concludes that her hostile work environment claim based on her national origin is timely.[11]  At her deposition, Plaintiff testified that in either April or May of 2002, Chase made reference to her being a medicine woman for her tribe and asked if Plaintiff "would be getting out the beads and feathers and dancing around biting the heads off live chickens" when she requested vacation time. (Steffy Dep., pp. 80, 142.)   It is unclear from the record when exactly these comments were made.  However, this Court must draw all inferences in Plaintiff's favor and assume that Chase made these two comments on or after May 7, 2002.[12]  As such, Plaintiff has

---

[10]In their briefs, counsel miscalculate the operative date as June 2, 2002.

[11]Plaintiff's age-based hostile work environment claim is untimely, and in any event, the allegations supporting that claim lack the severity necessary to maintain a hostile work environment claim.

[12]Plaintiff asserts that her statement in her affidavit that Chase stopped his harassing conduct on August 30, 2002, after she complained to Garza, should be viewed as evidence that some incidents took place within the limitations period.  (Steffy Aff., ¶ 47.)  She also relies on her affidavit statement that not all of the acts of harassment are set forth in her day-planner.  (Steffy Aff., ¶ 17.)  However, the Second Circuit has held that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition

sufficiently demonstrated that an event comprising part of her hostile work environment claim occurred within the limitations period.  Summary judgment on this basis is therefore precluded.

### b.    Severity of the Conduct

Courts examine various factors to ascertain whether a work environment is sufficiently hostile or abusive to support a Title VII claim.  These factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance."  Leibovitz, 252 F.3d at 188 (citing Harris, 510 U.S. at 23); Terry v. Ashcroft, 336 F.3d 128, 147-48 (2d Cir. 2003).  Isolated and occasional instances of harassment do not ordinarily rise to this level.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-271, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam).  The appropriate test is whether the "harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse. . . ." Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997).  The Second Circuit has stated:

> The environment need not be unendurable or intolerable.  Nor must the victim's psychological well-being be damaged. In short, the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases."

Terry, 336 F.3d at 147-48 (quotations, citation and alterations omitted).

---

testimony."  Hayes v. New York City Dept. of Corr.,  84 F.3d 614, 619 (2d Cir. 1996).  In any event, this Court finds Plaintiff's claim to be timely.

This Court need not linger on this point.  There are issues of fact concerning Chase's conduct, including what he said and when he said it.  Chase denies all of Plaintiff's allegations.   Nonetheless, this Court is satisfied that the incidents and comments concerning Plaintiff's national origin viewed in their totality (if found by a jury to have occurred), are sufficiently pervasive, severe, and frequent to support a finding that Plaintiff's workplace was altered for the worse.  See Torres, 116 F.3d at 632; Leibovitz, 252 F.3d at 188.  As such, summary judgment in Defendant's favor on this basis is not warranted.

c.      <strong>Imputation of Conduct to the Employer</strong>

Because the alleged conduct at issue in this case relates to Plaintiff's treatment by her supervisor, Chase, Defendant may be in a position to assert an affirmative defense to liability.  In the normal course, an employer is subject to vicarious liability to a victimized employee for a hostile work environment created by a supervisor with immediate authority (or successively higher) over the employee.  Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 2292-93, 141 L.Ed.2d 662 (1998).  However, in those cases where no tangible employment action is taken, the Supreme Court has recognized the existence of an affirmative defense for the employer.  See id. at 807.  A tangible action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  Burlington Indus. v. Ellereth, 524 U.S. 742, 76, 118 S.Ct. 2257, 141 L.Ed.2d 663 (1998).   Here, although Defendant eventually terminated Plaintiff's employment, it took no tangible action against Plaintiff during the time period that she

28

maintains a hostile work environment existed.

There are two elements to the affirmative defense.  First, the employer must show that it "exercised reasonable care to prevent and correct promptly any . . . harassing behavior."  <u>Faragher</u>, 524 U.S. at 807.  In meeting this burden, the Second Circuit has noted that

> An employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting . . . harassing conduct. Although not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense.

<u>Caridad v. Metro-North Commuter R.R.</u>, 191 F.3d 283, 295 (2d Cir. 1999).

This Court finds that there are no issues of material fact on this first prong.  Plaintiff does not contest Defendant's assertion that it has a Zero Tolerance Policy that is familiar to management and hourly employees at the Buffalo Stamping Plant.  (Defendant's Statement, ¶ 44.)  This policy is emphasized through meetings with supervisors and through plain-English bulletins distributed in the Plant.  (Defendant's Statement, ¶ 44.)  It is also reproduced on large, colorful posters in four locations in the Plant.  (Defendant's Statement, ¶ 45.)  Moreover, Defendant repeatedly trains all supervisory and management personnel regarding diversity in the workforce and how to recognize, prevent and respond to instances of discrimination or harassment.  (Defendant's Statement, ¶ 48.)  Finally, the Plant Manager has an Open Door Policy intended to encourage employees to raise concerns with management so that it can take immediate action.  (Defendant's Statement,

¶ 46.)  Plaintiff herself is familiar with the policy, having been charged with implementing and enforcing it during her tenure with Defendant.  (Defendant's Statement, ¶ 50.)

Second, the employer must demonstrate that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Faragher, 524 U.S. at 807.  Again, there are no issues of material fact.  Although Plaintiff maintains that she told Chase to stop his offending conduct,[13] she admits that she did not complain to anyone other than Chase until she did so to Garza on August 30, 2002, some two years after the harassment began.  (Steffy Aff., ¶¶ 24, 40, 44.)  It is undisputed that Plaintiff never filed a written statement alleging harassment, nor did she avail herself of the Plant Manager's Open Door Policy or the procedures set forth in the Zero Tolerance Policy.  (Defendants' Statement, ¶ 52.)  This is particularly unreasonable given Plaintiff's management position in the human resources department and her knowledge of Defendant's various programs.  Moreover, as soon as Plaintiff complained to Garza, the harassment stopped immediately.  (Steffy Aff., ¶ 47; Steffy Dep., pp. 76-77.)

Accordingly, in the absence of any material issues of fact, this Court finds that Defendant is entitled to summary judgment on Plaintiff's hostile work environment claims on this basis.  Its motion seeking such relief will be granted.

---

[13]Plaintiff appears to argue that Chase was a sufficiently high level employee such that Plaintiff's complaints to him put Defendant on notice of the offending conduct.  This argument, of course, ignores the fact that Chase was the alleged harasser.  Plaintiff has not brought to this Court's attention any cases standing for the proposition that notice to the alleged harasser alone, whether a high level employee or not, is sufficient notice to the company.  In fact, at oral argument, Plaintiff's counsel stated that this was his own "novel" argument.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part consistent with this Decision and Order.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 45) is GRANTED in part and DENIED in part consistent with this Decision and Order.

SO ORDERED.


Dated:      March 21, 2007
            Buffalo, New York



                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge